**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case No: 20 cv 8517

———————————————————————

DOREEN TOTH and ALBERT TOTH,

                         Plaintiffs,

       v.

JUUL LABS, INC., PAX LABS, INC., ALTRIA GROUP, INC., PHILIP MORRIS USA, INC., FONTEM US, INC., ITG BRANDS, LLC, LOEC, INC., REYNOLDS AMERICAN, INC., R. J. REYNOLDS TOBACCO COMPANY, JAPAN TOBACCO INTERNATIONAL USA, INC., and LOGIC TECHNOLOGY DEVELOPMENT LLC.,

                         Defendants.

———————————————————————

**COMPLAINT**

DEMAND FOR JURY TRIAL

DOREEN TOTH and ALBERT TOTH, by their attorneys GREGORY J. CANNATA & ASSOCIATES, LLP allege as follows:

## INTRODUCTION

1.      This is a products liability action alleging personal injuries arising out of JUUL LABS, INC., PAX LABS, INC., ALTRIA GROUP, INC., PHILIP MORRIS USA, INC., FONTEM US, INC., ITG BRANDS, LLC, LOEC, INC., REYNOLDS AMERICAN, INC., R. J. REYNOLDS TOBACCO COMPANY, JAPAN TOBACCO INTERNATIONAL USA, INC., and LOGIC TECHNOLOGY DEVELOPMENT LLC.'s (herein "Defendants") manufacture, design, assembly, testing, inspection, installation, delivery, marketing, advertising, selling, promotion, and/or supply of JUUL, blu, and Logic brand e-cigarettes and component parts.

2.      Plaintiff DOREEN TOTH (herein "Plaintiff") purchased, used, became addicted to, and was otherwise harmed by these electronic cigarettes, e-cigarettes, vaporizers, pods, e-liquids,

and their component parts (Electronic Nicotine Delivery Systems (hereinafter, "ENDS")), manufactured, designed, assembled, promoted, delivered, marketed, sold, and/or supplied by Defendants.

3.     As outlined in greater detail herein, Defendants manufactured, designed, assembled, tested, inspected, installed, delivered, marketed, advertised, sold, promoted, and/or supplied with respect to the above referenced products, specifically targeting Plaintiff through misleading, deceptive, and unconscionable practices, and designing, manufacturing and marking and a dangerous and defective product.

4.     Defendants' unlawful practices led to Plaintiff becoming addicted to e-cigarettes and vaping to her severe detriment.

5.     Defendants failed to warn users of their products of any adverse effects that they knew, or should have known, would likely occur, including but not limited to addiction, increased risk of heart disease and stroke, increased risk of pulmonary disease, increased risk of seizure, changes in brain functionality leading to anxiety, depression, and other long term mental health conditions, decreased functionality of the endocrine system, and heightened risk of cancer.

6.     Defendants fraudulently marketed their products as safer than conventional cigarettes.

7.     Defendants also fraudulently marketed their products as nicotine cessation devices.

8.     The Centers for Disease Control and Prevention (hereinafter, "CDC") and the Food and Drug Administration (hereinafter, "FDA"), along with numerous recognized medical experts, have indicated that users of electronic cigarettes and vaporizers should cease using such products until sufficient research on the long-term effects of such products can be completed.

9.     Additionally, the CDC, FDA, and numerous recognized medical experts have advised adult smokers who are attempting to quit to refrain from using ENDS and instead use evidence-based treatments, including counseling and FDA-approved medications.

10.     The Defendants' ENDS products have not been approved by the FDA as a smoking cessation therapy or in any other capacity.

11.     Plaintiffs seek, *inter alia*, compensation for the pain and suffering, economic loss and loss of services that the Plaintiffs suffer due to the Defendants' wrongdoings.

## JURISDICTION AND VENUE

12.     At all times herein, Plaintiffs DOREEN TOTH and ALBERT TOTH are citizens of the State of New York, domiciled in Orange County, New York.

13.     Derivative Plaintiff ALBERT TOTH is the husband of DOREEN TOTH.

14.     At all times herein, Defendant JUUL LABS, INC. (hereinafter "JUUL") is Delaware corporation with its principal place of business located in San Francisco, California.

15.     At all times herein, Defendant PAX LABS, INC. (hereinafter "PAX") is a Delaware corporation with its principal place of business located in San Francisco, California.

16.     At all times herein, Defendant ALTRIA GROUP, INC. (hereinafter "ALTRIA") is a Virginia Corporation with its principal place of business located in Richmond, Virginia.

17.     At all times herein, Defendant PHILIP MORRIS USA, INC. (hereinafter "PHILIP MORRIS") is a wholly owned subsidiary of ALTRIA. PHILIP MORRIS is a Virginia corporation with its principal place of business located in Richmond, Virginia.

18.     At all times herein, Defendant FONTEM US, LLC (hereinafter "FONTEM") is a North Carolina Corporation with its principal place of business located in Charlotte, North Carolina.

19.     At all times herein, Defendant ITG BRANDS, LLC (hereinafter "ITG") is a Texas Corporation with its principal place of business located in North Carolina.

20.     At all times herein, Defendant LOEC, INC. (hereinafter "LOEC") is a Delaware Corporation with its principal place of business located in North Carolina.

21.     At all times herein, Defendant REYNOLDS AMERICAN, INC. (hereinafter "REYNOLDS") is a North Carolina Corporation with its principal place of business located in North Carolina.

22.     At all times herein, Defendant R. J. REYNOLDS TOBACCO COMPANY (hereinafter "R. J. REYNOLDS") is a North Carolina Corporation with its principal place of business located in North Carolina.

23.     At all times herein, Defendant JAPAN TOBACCO INTERNATIONAL USA, INC. (hereinafter "JAPAN TOBACCO") is a California Corporation with its principal place of business located in New Jersey.

24.     At all times herein, Defendant LOGIC TECHNOLOGY DEVELOPMENT LLC. (hereinafter "LOGIC") is a Florida Corporation with its principal place of business located in New Jersey.

25.     At all times herein mentioned Defendants, their servants, agents, subsidiaries, distributors, representatives and/or employees solicited business in the State of New York.

26.     At all times herein mentioned Defendants, servants, agents, subsidiaries, distributors, representatives and/or employees shipped their products to the State of New York and derived substantial revenue from goods used or consumed or services rendered in the State of New York.

27.     At all times herein mentioned Defendants, servants, agents, subsidiaries, distributors, representatives and/or employees expected or should reasonably have expected their acts and business activities to have consequences within the State of New York.

28.     At all times herein mentioned Defendants, servants, agents, subsidiaries, distributors, representatives and/or employees, derived substantial revenue from interstate or international commerce.

29.     At all times herein mentioned Defendants' products were used in New York by the plaintiff and said products caused plaintiff injury in New York.

30.     At all times herein mentioned, pursuant to 28 USC §1332, this is a civil action where the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interests and costs, and every issue of law and fact herein is wholly between citizens of different states.

31.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391 (b)(2) in that a substantial part of the events giving rise to the claim occurred in this District.

## ALLEGATIONS OF FACT

32.     That Plaintiffs repeat, reiterate and reallege each and every allegation in this Complaint with the same force and effect as though each were more fully set forth at length herein.

33.     At all times herein, Defendants JUUL, PAX, ALTRIA, PHILIPS MORRIS, FONTEM, ITG, LOEC, REYNOLDS, R. J. REYNOLDS, JAPAN TOBACCO, and LOGIC, and their servants, agents, subsidiaries, distributors, representatives and/or employees manufactured, designed, assembled, tested, inspected, installed, delivered, marketed, advertised, sold, promoted, and/or supplied e-cigarettes, vaporizers, e-liquids, and associated component parts ("ENDS").

34.     At all times herein, JUUL, PAX, ALTRIA and PHILIPS MORRIS, and their servants, agents, subsidiaries, distributors, representatives, and/or employees manufactured,

designed, assembled, tested, inspected, installed, delivered, marketed, advertised, sold, promoted, and/or supplied the ENDS product commonly known as JUUL.

35.     At all times herein, FONTEM, ITG, LOEC, REYNOLDS, and R. J. REYNOLDS, their, and their servants, agents, subsidiaries, distributors, representatives, and/or employees manufactured, designed, assembled, tested, inspected, installed, delivered, marketed, advertised, sold, promoted, and/or supplied the ENDS product commonly known as blu.

36.     At all times herein, JAPAN AMERICA and LOGIC, their, and their servants, agents, subsidiaries, distributors, representatives, and/or employees  manufactured, designed, assembled, tested, inspected, installed, delivered, marketed, advertised, sold, promoted, and/or supplied the ENDS product commonly known as Logic.

37.     Defendant JUUL was originally a part of PAX but became a separate corporation in 2017. A substantial portion of the conduct cited here occurred while JUUL was a part of PAX.

38.     In approximately December 2018 ALTRIA and PHILIPS MORRIS purchased ownership interest in JUUL.

39.     In approximately 2012 Lorillard, Inc. purchased blu. The product line was manufactured, distributed, marketed and sold by defendant LOEC, which was a subsidiary for Lorillard, Inc.

40.     In approximately 2014 defendants REYNOLDS and R.J. REYNOLDS purchased Lorillard, Inc.

41.     In approximately 2014 IMPERIAL BRANDS PLC purchased the blu product line.

42.     ITG is a subsidiary of IMPERIAL BRANDS PLC.

43.     Defendant FONTEM US, INC. is a subsidiary of FONTEM VENTURES B.V., which is a part of the IMPERIAL BRANDS PLC.

44.     At all times hereinafter mentioned, defendants FONTEM and ITG manufactured, distributed, marketed and sold the blu line of products to the public, including the plaintiff, in the United States.

45.     Prior to 2015, defendant LOGIC manufactured, marketed, and distributed the Logic line of e-cigarette products.

46.     In 2015 Defendant JAPAN TOBACCO acquired LOGIC TECHNOLOGY.

47.     At all times hereinafter defendants LOGIC TECHNOLOGY and JAPAN TOBACCO manufactured, distributed, marketed, and sold its LOGIC line of products to the public, including the plaintiff.

48.     ENDS, such as JULL, blu and Logic e-cigarettes are battery operated devices which deliver a nicotine-containing aerosol that is inhaled by the user.

49.     These devices were marketed as being "healthy" and "safer" alternatives to traditional smoking.

50.     Defendants implemented marketing schemes designed to attract individuals to purchase their highly addictive products while using false, deceptive, unconscionable, and misleading advertising regarding the health effects of their products.

51.     Defendants knew that their products contained nicotine.

52.     Defendants knew or should have known that nicotine was an addictive substance.

53.     Defendants failed to include proper warning labels on their products and advertisements.

54.     The adverse effects of nicotine on users health, brain development and bodily systems are well studied.

55.     Defendants knew or should have known that nicotine has adverse effects on users health, brain development and bodily systems.

56.     Defendants knew or should have known that ENDS were not safe for consumers and posed a similar, if not increased risk of nicotine dependence than conventional cigarettes and failed to disclose this information to the public, including Plaintiff.

57.     Defendants' failure to adequately warn users of the effects of the amount of nicotine contained in its products and of the adverse health effects demonstrates Defendants' intent to attract consumers to use and become addicted to their products under false pretenses.

58.     Upon information and belief, Defendants developed products for users to inhale patented vapors consisting of nicotine, glycerine, and propylene glycol.

59.     JUUL's formulation uses a combination of nicotine salts and benzoic acid.  The benzoic acid in JUULpods serves to alter the pH of the nicotine salt in the JUULpods and creates even more potency than cigarettes. In U.S. patent No. 9,215,895, assigned to "Pax Labs, Inc." and listing JUUL executive Adam Bowen as an inventor, JUUL details a process for combining benzoic acids with nicotine salts to create an aerosolized nicotine vapor that is more potent than a cigarette.

60.     JUUL was designed to be easy to conceal and easy to use undetected. Its defective design has caused an increase risk use among users and its more potent nicotine has resulted in increased addiction and health concerns.

61.     Blu was designed to mimic a cigarette and to give users a "classic experience" of smoking[1]. Its defective design has caused an increase risk use among users and its more potent nicotine has resulted in increased addiction and health concerns.

---

[1] https://www.blu.com/en/US/explore/explore-vaping/about-blu-products/blu-how-our-e-cigarettes-work. Accessed October 12, 2020.

62.     Logic was designed to mimic a cigarette. Its defective design has caused an increase risk use among users and its more potent nicotine has resulted in increased addiction and health concerns.

63.     JUUL, blu and Logic marketed themselves as safer alternatives to smoking.

64.     Neither JUUL, blu nor Logic have been approved by the FDA or any other entity as a smoking therapy, smoking cessation device, or safer alternative to smoking.

65.     On September 9, 2019, the FDA sent Defendant JUUL a "warning letter" finding that JUUL fraudulently and unlawfully marketed, sold, and distributed its products by advertising them as safer than conventional cigarettes without the appropriate scientific evidence and FDA Order to make such a claim.

66.     Upon information and belief, the Defendants were aware that their fraudulent advertising and marketing targeted toward encouraging and attracting individuals towards its products without revealing the highly dangerous nature thereof.

67.      Plaintiff DOREEN TOTH purchased and used ENDS manufactured, designed, assembled, promoted, delivered, marketed, sold, and/or supplied by Defendants based upon the Defendants' false, misleading, deceptive, unconscionable, and negligent practices resulting to her severe detriment.

68.     Based on Defendants' advertisements and marketing, Plaintiff believed that these products were safe for use, were safer than conventional cigarettes, and would not cause adverse health effects.

69.     Plaintiff began purchasing ENDS in approximately 2014.

70.     Plaintiff used blu, Logic and JUUL ENDS products.

71.     When she began purchasing the ENDS products, Plaintiff was not aware of the addictiveness of the products.

72.     Plaintiff was not aware that these products contained high levels of nicotine.

73.     Plaintiff was not aware of the dangers that these products posed.

74.     Plaintiff would not have purchased Defendants' ENDS products had she known they were highly addictive, contained high concentrations of nicotine and/or would cause adverse health effects.

75.     As a result of her use of Defendants' ENDS products, Plaintiff has suffered and continues to suffer severe health effects and Derivative Plaintiff has suffered and continues to suffer from a loss of services.

### AS AND FOR A FIRST CAUSE OF ACTION – NEGLIGENCE

76.     Plaintiffs repeat, reiterate and reallege each and every allegation in this Complaint with the same force and effect as though each were more fully set forth at length herein.

77.     Defendants had a duty to exercise reasonable care in the design, manufacture, marketing, supply, promotion, packaging, sale, and/or distribution of their ENDS products into the stream of commerce.

78.     Defendants had a duty to ensure that their ENDS products would not cause users to suffer unreasonable danger, illness, side effects and harm.

79.     Defendants failed to exercise ordinary care in the design, manufacture, marketing, supply, promotion, packaging, sale, testing, quality assurance, quality control and/or distribution of their ENDS products into interstate commerce in that Defendants knew or should have known that using the ENDS products created a high risk of unreasonable danger including severe and personal injuries, physical pain and mental anguish, which are permanent and lasting in nature.

80.     Defendants, their agents, servants and/or employees were negligent in their failure to warn users of the dangers, side effects, and risks, improper advertising and marking, design, manufacture, testing, and concealing of important information regarding the safety, dangers, side effects, and risk of the ENDS products.

81.     Despite the fact that Defendants knew or should have known that the ENDS products were unreasonably dangerous, Defendants continued to sell, market, manufacture, distribute and/or sell the ENDS products to the public.

82.     Defendants knew or should have known that users such as the Plaintiff would suffer injury as a result of Defendants' failure to exercise ordinary care.

83.     Defendants' negligence was a proximate cause of Plaintiff's injuries.

84.     By reason of the foregoing dangerous and defective ENDS, this plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries; plaintiff incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; and plaintiff has suffered and in the future will necessarily suffer additional loss of time and earnings from employment; and plaintiff will be unable to pursue the usual duties with the same degree of efficiency as prior to this accident, all to plaintiff's great damage.

85.     The foregoing occurrence and the injuries to Plaintiffs were caused solely by reason of the carelessness and negligence of the Defendants and without any negligence on the part of the Plaintiffs contributing thereto.

86.     WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

### AS AND FOR A SECOND CAUSE OF ACTION – STRICT PRODUCTS LIABILITY DEFECTIVE DESIGN

87.     Plaintiffs repeat, reiterate and reallege each and every allegation in this Complaint with the same force and effect as though each were more fully set forth a length herein.

88.     At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed the ENDS products as hereinabove and used by Plaintiff.

89.     At all times herein mentioned the ENDS products were dangerous, defective, hazardous, unsuitable, inappropriate, and unsafe as designed and manufactured by Defendants.

90.     At all times herein mentioned, Defendants knew or had reason to know that the ENDS were defective, inherently dangerous, hazardous and unsafe.

91.     At all times herein mentioned, Defendants knew or had reason to know that the ENDS were defective, inherently dangerous, and unsafe when used in the form and manner as intended by the Defendants.

92.     At all times herein mentioned, the Defendants created products unreasonably dangerous for their normal, intended use.

93.     At the time of Plaintiff's use of the ENDS products, she was using the products for the purposes and in a manner as intended.

94.     At all times herein mentioned, the ENDS was expected to and did reach the users, such as Plaintiff, without substantial change in the condition in which it was produced, manufactured, sold, distributed and marketed by the Defendants.

95.     Defendants had a duty to design, manufacture, sell, distribute and market a product that was not unreasonable dangerous for its normal, intended use.

96.     As designed, manufactured, sold, distributed and marketed by the Defendants the foreseeable risks in utilizing the ENDS in the unsafe, defective and inherently dangerous condition exceeded the benefits associated with the design, manufacture, and production of the ENDS.

97.     At all times herein mentioned, Defendants knew or had reason to know that the ENDS were defectively designed.

98.     At all times herein mentioned, Defendants failed to equip the ENDS with proper safeguards.

99.     At all times herein mentioned, Defendants, their servants, agents, distributors, representatives and/or employees failed to design their ENDS in accordance with safety codes, regulations and statutes.

100.     At all times herein mentioned, Defendants, their servants, agents, distributors, representatives and/or employees knew or could and should have known that the ENDS as designed would cause the user to be harm and serious injury.

101.     At all times herein mentioned, Defendants, their servants, agents, distributors, representatives and/or employees failed to correct the dangerous and defective conditions in the ENDS.

102.     At all times herein mentioned, Defendants, their servants, agents, distributors, representatives and/or employees failed to design ENDS using feasible and safer alternative designs.

103.     As a direct and proximate cause of Defendants' actions and inactions Plaintiffs have suffered and will continue to suffer in the future severe injuries and damages.

104.     The products designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed were defective and created an unreasonable risk to the health of consumers, and Defendants are therefore strictly liable for the injuries sustained by the Plaintiff.

105.     WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

**AS AND FOR A THIRD CAUSE OF ACTION – FAILURE TO WARN**

106.     Plaintiffs repeat, reiterate and reallege each and every allegation in this Complaint with the same force and effect as though each were more fully set forth a length herein.

107.     At all times herein mentioned, the ENDS products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate warnings.

108.     At all times herein mentioned, the risk of using Defendants ENDS products were known to the Defendants.

109.     At all times herein mentioned, Defendants failed to warn consumers, including Plaintiff, of the dangers known the Defendants of using the ENDS products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants.

110.     At all times herein mentioned, the ENDS products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because after Defendants became aware of the dangers of the ENDS products, they failed to provide adequate warnings to users and consumers of the products, and continued to improperly advertise, market and/or promote the product.

14

111.    As a direct and proximate cause of Defendants' actions and inactions Plaintiffs have suffered and will continue to suffer in the future severe injuries and damages.

112.    The products designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed were defective and created an unreasonable risk to the health of consumers, and Defendants are therefore strictly liable for the injuries sustained by the Plaintiff.

113.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## AS AND FOR A FOUTH CAUSE OF ACTION –NY GBL §349

114.    Plaintiffs repeat, reiterate and reallege each and every allegation in this Complaint with the same force and effect as though each were more fully set forth a length herein.

115.    The New York General Business Law § 349 prohibits businesses from engaging in any deceptive acts or practices in connection with consumer sales.

116.    New York General Business Law § 349 also allows an individual injured due to any violation of this section to enjoin such unlawful acts or practice and to recover actual damages.

117.    New York General Business Law § 349 further allows treble damages and attorneys' fees to be awarded for violation of this section.

118.    Defendants violated New York General Business Law § 349 by misrepresenting the e-cigarettes and ENDS, including e-liquids, pods, and component parts, to be safe for use.

119.    Defendants also violated New York General Business Law § 349 by suppressing and/or omitting material facts regarding the addictiveness and safety of e-cigarettes and ENDS.

120.     Defendants also violated New York General Business Law § 349 by engaging in unconscionable conduct with respect to misrepresenting their products as a safe and/or safer alternative to traditional cigarettes to attract new users.

121.     Each false pretense, misrepresentation, unconscionable act, and/or knowing omission of material fact by Defendants constitutes a separate violation of New York General Business Law § 349.

122.     As a direct and proximate cause of Defendants' violation of New York General Business Law § 349, Plaintiff has suffered, and will in the future continue to suffer, injuries and damages.

123.     WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION –NY GLB §350

124.     Plaintiffs repeat, reiterate and reallege each and every allegation in this Complaint with the same force and effect as though each were more fully set forth a length herein.

125.     New York General Business Law § 350 addresses general advertising practices.

126.     New York General Business Law § 350 provides, in relevant part, the following:

> The term 'false advertising' means advertising, including labeling, of a commodity, … if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to  which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

16

127.    In its advertisements, Defendants used illustrations, graphic depictions, colors, models, influencers, and type that resulted in obscuring material facts regarding the addictiveness and misrepresenting the safety of e-cigarettes and ENDS.

128.    Defendants' disclaimers on their advertisements were woefully insufficient relative to other aspects of the advertisements.

129.    Defendants have failed to substantiate through any credible documents, records, or any other written proof its claims regarding the safety of its products, including but not limited to the assertion that e-cigarettes and ENDS assist conventional cigarette smokers to quit smoking and/or that e-cigarettes and ENDS are a safe and/or safer alternative to conventional cigarettes.

130.    The above referenced violations constitute multiple violations of New York General Business Law § 350.

131.    Each violation of New York General Business Law § 350 by Defendants constitutes a per se violation of New York General Business Law § 349.

132.    As a direct and proximate cause of Defendants' violation of New York General Business Law § 350, Plaintiff has suffered, and will in the future continue to suffer, severe injuries and damages.

133.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

### AS AND FOR A SIXTH CAUSE OF ACTION –FRAUD

134.    Plaintiffs repeat, reiterate and reallege each and every allegation in this Complaint with the same force and effect as though each were more fully set forth a length herein.

135.    Defendants fraudulently and deceptively marketed, advertised, distributed, and sold e-cigarettes and associated ENDS as non-addictive or less addictive products than conventional cigarettes.

136.    Defendants failed to disclose the highly addictive nature of their products and the adverse health effects likely to arise therefrom.

137.    Defendants made these fraudulent representations to Plaintiff through advertising and marketing campaigns.

138.    Each misrepresentation and omission was material as it contributed to the evaluations by Plaintiff as to whether to purchase and use Defendants' products.

139.    Defendants knew that their misrepresentations and omissions were false and intended Plaintiff to rely upon these misrepresentations and omissions to purchase their products.

140.    Plaintiffs reasonably relied upon Defendants' misrepresentations and omissions to their severe detriment.

141.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

**AS AND FOR A SEVENTH CAUSE OF ACTION – UNJUST ENRICHMENT**

142.    Plaintiffs repeat, reiterate and reallege each and every allegation in this Complaint with the same force and effect as though each were more fully set forth a length herein.

143.    Defendants have been unjustly enriched through their sale of ENDS products based on material misrepresentations and omissions, false advertising, unconscionable business practices, and fraud.

144.     Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff.

145.     Defendants knowingly received and retained wrongful benefits and funds from Plaintiff.

146.     It would be inequitable to allow Defendants to retain these benefits and funds.

147.     Plaintiff is therefore entitled to recover from Defendants, as restitution, all money paid for ENDS products, any benefit received by Defendants as a result of such activity, and interest thereon from the time of payment.

148.     WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## AS AND FOR A EIGHTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

149.     Plaintiffs repeat, reiterate and reallege each and every allegation in this Complaint with the same force and effect as though each were more fully set forth a length herein.

150.     The Uniform Commercial Code, N.Y. UCC § 2-314 and § 2-315, provide that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

151.     With respect to ENDS products, Defendants warranted that its e-cigarettes and associated ENDS would be merchantable, fit for the ordinary purposes for which they are used, and conform to promises and affirmations of fact made on the container and label.

152.     At the time of delivery, Defendants breached the implied warranties of merchantability and fitness for a particular purpose as their products were defective as alleged

above, posed severe safety risks at the time they were sold, and failed to conform to the standard performance of like products in trade.

153.    Defendants are merchants with respect to the subject products sold to Plaintiff.

154.    Defendants' products are not fit for the intended purpose of offering a safe and/or safer alternative to cigarettes because such products when used as intended worsen or aggravate nicotine addiction and cause severe adverse health effects.

155.    As a direct and proximate result of Defendants' breach of the implied warranties, Plaintiff has suffered damages.

156.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

**AS AND FOR A NINTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY**

157.    Plaintiffs repeat, reiterate and reallege each and every allegation in this Complaint with the same force and effect as though each were more fully set forth a length herein.

158.    N.Y. UCC § 2-313 provides that express warranties by the seller are created by any affirmation of fact or promise made by the seller to the buyer which related to the goods and becomes a basis of the bargain.

159.    The express warranty creates an obligation that the goods shall conform to the affirmation or promise.

160.    Defendants issued express warranties in connection with their e-cigarettes and associated ENDS that such products were less addictive and less harmful than conventional cigarettes, and that they were smoking cessation devices, through their marketing and advertisements.

161.    The affirmations of fact and promises set forth in Defendants' marketing and advertising became part of the basis of the bargain between Plaintiff.

162.    These affirmations of fact and promises created express warranties that ENDS products would conform to Defendants' affirmations of fact and promises.

163.    Defendants breached their express warranties as ENDS products deliver a more potent source of nicotine than conventional cigarettes and cause severe adverse health consequences.

164.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff suffered damages as she would not have purchased and/or used Defendants' products had she known the true facts about the products.

165.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs asks this Court to:

a. Award actual, compensatory, and consequential damages;

b. Award all expenses, including incidental past and future expenses, including medical expenses, loss of earnings, and loss of earning capacity;

c. Award restitution;

d. Award punitive damages;

e. Award reasonable attorneys' fees and costs of this case;

f. Award prejudgment and post-judgment interest;

g. Award all statutory damages, including double and treble damages as authorized

by statute;

h. Enter appropriate injunctive relief against Defendants and their officers, agents,

successors, employees, representatives, and/or assigned; and

i. Such other and further legal, equitable, and declaratory relief as justice requires.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 13, 2020

_____

Alison Cannata Hendele, Esq.
Gregory J. Cannata & Associates, LLP
Attorney for Plaintiffs
60 East 42nd Street, Suite 932
New York, New York 10165
 (212) 553-9205